# THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NORTH JERSEY BRAIN & SPINE CENTER,<br><br>        Plaintiff,<br><br>  vs.<br><br>AETNA LIFE INSURANCE CO.; *et al.*,<br><br>        Defendants. | Civil Action No. 16-01797 |
| NORTH JERSEY BRAIN & SPINE CENTER,<br><br>        Plaintiff,<br><br>  vs.<br><br>AETNA LIFE INSURANCE CO.; *et al.*,<br><br>        Defendants. | Civil Action No. 16-01544<br><br><br><br>Return Date: Oct. 3, 2016<br><br>**Oral Argument Requested** |

_____

## PLAINTIFF'S REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTIONS TO REMAND FOR LACK OF ERISA JURISDICTION
_____

Eric D. Katz  |  NJ Atty. No. 016791991
David M. Estes  |  NJ Atty. No.  034532011
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068
P: 973-228-9898
F: 973-228-0303
E: ekatz@mskf.net
*Counsel for Plaintiff*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ................................................................................................................1

REPLY ARGUMENT .........................................................................................................2

  I.  DEFENDANTS CANNOT ESTABLISH ERISA STANDING....................................2

    A. Aetna's Anti-Assignment Clause Precludes Removal Jurisdiction .....................3

    B. Defendants Lack Necessary Proof as to Most Claims ........................................5

    C. Claim Form 1500 is Not a Substitute for an Actual Assignment........................7

  II.  PLAINTIFF HAS "INDEPENDENT" CLAIMS ................................................11

  III.  SUPPLEMENTAL JURISDICTION SHOULD NOT BE EXERCISED..........................12

  IV.  ALTERNATIVELY, DEFENDANTS CONCEDE AND WAIVE ANY
      DEFENSE OR CHALLENGE TO PLAINTIFF'S ERISA STANDING..........................14

CONCLUSION....................................................................................................................15

i

# TABLE OF AUTHORITIES

**Cases**

*Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004)................................................2,11,12

*Alessi v. Beracha*, 244 F. Supp. 2d 354 (D. Del. 2003).............................................2

*CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165 (3d Cir. 2014)......................8,11

*Emergency Physicians of St. Clare's v. United Health Care*, No. 14-404,
   2014 WL 7404563 (D.N.J. Dec. 29, 2014)..........................................................11,12

*Horizon Blue Cross Blue Shield of N.J. v. E. Brunswick Surgery Ctr.*,
   623 F. Supp. 2d 568 (D.N.J. 2009) .......................................................................12

*Mazzola v. AmeriChoice of N.J., Inc.*, No. 13-429, 2013 WL 6022345
   (D.N.J. Nov. 13, 2013)...........................................................................................14

*N.J. Spinal Med. & Surgery, P.A. v. Aetna Ins. Co.*, No. 09-2503,
   2009 WL 3379911 (D.N.J. Oct. 19, 2009).............................................................9

*N.J. Spinal Med. & Surgery PA v. IBEW Loc. 164*, No. 11-5493,
   2012 WL 1988708 (D.N.J. May 31, 2012) .............................................................9

*N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369 (3d Cir. 2015) ..................8

*N. Jersey Ctr. for Surgery, P.A. v. Horizon Blue Cross Blue Shield of N.J., Inc.*,
   No. 07-4812, 2008 WL 4371754 (D.N.J. Sept. 18, 2008)......................................4,5

*Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941) .........................................2

*Somerset Ortho. Assocs., P.A. v. Aetna Life Ins. Co.*, No. 06-867,
   2007 WL 432986 (D.N.J. Feb. 2, 2007) .................................................................4

*Specialty Surgery of Middletown v. Aetna*, No. 12-4429, 2014 WL 2861311
   (D.N.J. June 24, 2014) ...........................................................................................4

*Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006
   (3d Cir. 1987).........................................................................................................5

*Wayne Surgical Ctr., LLC v. Concentra Preferred Sys., Inc.*, No. 06-928,
   2007 WL 2416428 (D.N.J. Aug. 20, 2007) ...........................................................11

## INTRODUCTION

Plaintiff North Jersey Brain & Spine Center's motions to remand for lack of jurisdiction should be granted. Preliminarily, Case No. 16-1797 has a separate pending remand motion for procedural defect because Aetna violated the unanimity rule. (D.E. 6). And the opposition to this motion does not indicate that there are ERISA plans in Case No. 16-1544. For these reasons alone, both cases should be remanded.

Beyond this, remand is necessary because defendants fail to prove that plaintiff had ERISA standing to bring *each* of the claims in these cases. First, Aetna tries to sweep under the rug its anti-assignment clause. Aetna has represented to courts many times that this provision invalidates provider standing, and here Aetna has not repudiated its prior position. Therefore, Aetna cannot establish that plaintiff could have brought these claims under ERISA. Further, Aetna's proffer consists of 11 assignments, irrelevant claim forms and a speculative affiant who lacks personal knowledge. These cases involve 41 claims, so the proffer is wholly inadequate and underscores that the vast majority of claims in these actions must be remanded.

Aetna also fails to establish that there are no independent duties implicated by its conduct. Significantly, Aetna does not dispute that virtually every claim at issue implicates the *amount* of reimbursement, not the *existence* of coverage. Here, plaintiff has contractual relationships with Aetna's agents, and a course of conduct

1

supporting *quasi-contractual* claims, which are sufficient to support a duty independent of ERISA.  Aetna's only response is to distort the *Davila* test, claiming incorrectly it only applies to independent *contractual* claims. This is simply not so.

Finally, Aetna admits that 20 of the patients/claims at issue in these suits are non-ERISA claims.  Consequently, the Court should decline supplemental jurisdiction over the numerous non-ERISA claims implicating complex New Jersey healthcare regulations.  Also, in the alternative, to the extent the Court finds ERISA jurisdiction with respect to a few claims, the Court's opinion should reflect that Aetna's opposition to this motion is a waiver of any defense or objection claiming plaintiff's lack ERISA standing.

"[R]emoval jurisdiction is…strictly construed, requiring remand to state court if any doubt exists over whether removal was proper.  *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 104 (1941)."  *Alessi v. Beracha*, 244 F. Supp. 2d 354, 356 (D. Del. 2003).  Here, Aetna's removal pleadings and opposition certification leave many questions unanswered.  And "if any doubt exists," remand is required.

## REPLY ARGUMENT

## I.   DEFENDANTS CANNOT ESTABLISH ERISA STANDING

Defendants **concede** that they have the burden to prove that "plaintiff 'could have brought [its] claim under ERISA'" and that a medical provider must have "derivative standing to initiate suit under ERISA" (Def's Br. 9,12).  Therefore, the

2

discrete issue is whether defendants' proffer establishes derivative ERISA standing as to *each* claim.  It does not.

### A.  Aetna's Anti-Assignment Clause Precludes Removal Jurisdiction

Aetna cannot establish that plaintiff could have brought these claims because Aetna failed to submit to the Court its plan documents for each of the 41 claims, nor did Aetna disclaim the validity and enforceability of the boilerplate anti-assignment clause in its plans – which is ***required*** to establish removal jurisdiction here.  *See Spinedex Phys'l Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1296–97 (9th Cir. 2014) (holding anti-assignment clause defeats standing).

Aetna's well-trodden litigation strategy is to dodge the merits of medical provider lawsuits by claiming that providers cannot bring claims under ERISA because its anti-assignment clause voids any assignment obtained from a patient. Recently in this District, for example,

> Aetna contend[ed] that the benefit plan…contains a provision requiring that coverage may be assigned only with its consent…. **Aetna contend[ed], because Plaintiff pursues its claims as an assignee under the contract, and because that assignment is invalid under the anti-assignment provision in the contract, Plaintiff lacks standing to pursue these claims**.

*Neurological Surgery Assocs. P.A. v. Aetna Life Ins. Co.*, No. 12-5600, 2014 WL 2510555, at *2 (D.N.J. June 4, 2014).

3

In light of anti-assignment clauses, courts in this District have repeatedly held that a removing-insurer, like Aetna, must prove that the subject plan lacks an anti-assignment clause, or otherwise establish that such a provision does not void *ab initio* and preclude derivative standing. *E.g.*, *Somerset Orthopedic Assocs., P.A. v. Aetna Life Ins. Co.*, No. 06-867, 2007 WL 432986, at *1–2 (D.N.J. Feb. 2, 2007); *N. Jersey Ctr. for Surgery, P.A. v. Horizon Blue Cross Blue Shield of N.J., Inc.*, No. 07-4812, 2008 WL 4371754, at *8 n.5 (D.N.J. Sept. 18, 2008).

Here, Aetna is conspicuously silent. In its removal pleading, Aetna omitted any allegation with respect to the existence, enforceability or waiver of its standard anti-assignment clause with respect to the 41 claims at issue. In response to plaintiff's brief on this issue (Pl. Br. 18 n.4), the Certification of Elizabeth Petrozelli fails to marshal <u>even one</u> responsive averment and omits the plan documents. The silence is deafening.

What is clear, however, is that Aetna routinely invokes its anti-assignment clause in this District, and across the nation, as a defense to defeat healthcare claims on a procedural technicality. *E.g.*, *Neurological Surgery*, 2014 WL 2510555, at *2 (**same defense counsel**); *Specialty Surgery of Middletown v. Aetna*, No. 12-4429, 2014 WL 2861311, at *2-4 (D.N.J. June 24, 2014) (**same defense counsel**); *Univ. of Wisc. Hosps. & Clinics Auth. v. Aetna Health & Life Ins. Co.*, 144 F. Supp. 3d 1048, 1050–53 (W.D. Wis. 2015); *Neuroaxis Neurosurg. Assocs., PC v. Costco*

4

*Wholesale Co.*, 919 F. Supp. 2d 345, 355–56 (S.D.N.Y. 2013); *Productive MD, LLC v. Aetna Health, Inc.*, 969 F. Supp. 2d 901, 910 n.7, 927–28 (M.D. Tenn. 2013).

Aetna wants it both ways. It contends (speculatively) that plaintiff has obtained adequate assignments from patients for each of the 41 claims in dispute. But Aetna studiously avoids denying that its plans have an anti-assignment provision (withholding the document to avoid scrutiny), nor does it repudiate or otherwise waive the defense. Either there is standing or there is not. In light of Aetna's historical position before this Court, and its submissions here, it has not carried its heavy burden to show plaintiff could have brought these claims under ERISA. *See Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987) (strictly construing removal jurisdiction; all doubts resolved in favor of remand).

More fundamentally, Aetna should be judicially estopped from taking duplicitous, incoherent positions regarding the efficacy of its anti-assignment clause and the validity of providers' derivative ERISA standing. To be blunt, Aetna has made its bed; now it must sleep in it.

### B. Defendants Lack Necessary Proof as to Most Claims

It is well-settled in this District that, as "the party asserting federal jurisdiction, [the insurer] has the burden of proving that [provider]'s claims are ERISA claims, and in this case, that requires [defendant] to prove the existence of a valid assignment." *N. Jersey Ctr.*, 2008 WL 4371754, at *7.

5

Here, defendants fail to carry that burden.  Aetna submits *only* 11 redacted assignment forms, which it avers are related to claims at issue in these lawsuits.  *See* Petrozelli Cert., ¶ 9 & Ex. C.   There are, however, 41 claims at issue here. **Defendants' proof is irrelevant and cannot establish standing with respect to 73% of plaintiff's claims** (30 of 41).[1]  The 30 claims for which there is no proof in the record of an assignment must be remanded for lack of jurisdiction.

Recognizing they lack sufficient proof, defendants try to hide behind affiant Elizabeth Petrozelli, who avers that "Plaintiff utilizes a standard assignment of benefits form" and other "routine" internal business practices.  *See* Petrozelli Cert., ¶¶ 8-9.  However, Aetna's affiant lacks any personal knowledge regarding plaintiff's internal practice, so her statements must be stricken pursuant to L. Civ. R. 7.2(a). *Zrodskey v. Head Clssf'n Officer*, No. 11-0283, 2012 WL 1565417, at *4 (D.N.J. May 2, 2012).  Petrozelli has no personal knowledge of NJBSC's internal operations. Nor does she have any case-specific knowledge regarding whether an assignment was obtained with respect to the 31 patients, or whether a "standard" form was used.

### C.  Claim Form 1500 is *Not* a Substitute for an Actual Assignment

---

[1]      Aetna lacks an Assignment of Benefits for the following 31 patients/claims: R.E., S.L., E.L., F.G., P.P., R.C., K.E., J.L., Y.F., N.H., J.S., R.I., M.FC., L.H., D.G., M.FK, E.F., E.RM., D.G., V.P., T.G., M.C., A.B., S.K., M.G., L.P. and E.RV. (Case No. 16-1797), and R.M., E.R., O.I. and C.C. (Case No. 16-1544).

Grasping, Aetna asserts that by checking Box 27 on a standard Health Insurance Claim Form 1500, a provider has derivative ERISA standing.  This position is meritless.  First, defendants gloss over what the form is and box 27 means.  Essentially all health insurance claims are submitted on a standardized form developed by a federal agency.  *See* Petrozelli Cert., Ex. A.  The significance and meaning of Box 27 within the private health care industry is **unclear**.  Since Form 1500 was developed by the government, some providers believe Box 27 only applies to "govt. claims" and checking "yes" indicates the provider will accept assignment of Medicare and Medicaid benefits.  *E.g.*, ANSI, <u>CMS-1500 Claim Form</u>; S.C. Medicaid Dental Program, <u>Completion of the CMS 1500 (08/05) Claim Form</u> (attached to Reply Certification of Eric D. Katz ("Reply Cert.") as Exs. 1 & 2).  In the private insurer context, the meaning of the Box varies:

> Check with each carrier to receive clarification on what each of these choices mean to that specific carrier.  Some consider a yes to mean that the fee schedule will be accepted in full with no balance billed to the patient, while others consider a yes to mean that the check will go to the provider. Other carriers consider a no to mean that the correspondence will go to the patient and not the provider. I recommend checking with the carriers to avoid any surprises about payment.

*See* Bradley, <u>The new CMS 1500 claim and how to avoid common stumbling blocks</u>, Dentistry IQ (Feb. 17, 2015) (attached to Reply Cert. as Ex. 3).  The National Uniform Claim Committee "does NOT define what accepting assignment might or

7

might not mean," but notes that in the private insurer context, checking yes to Box 27 generally "means that payment should go directly to [the provider]," and checking no "generally means payment will go to the patient." *See* InstaCode, <u>What Does Accept Assignment Mean?</u> (attached to Reply Cert. as Ex. 4); *e.g.*, Mayo Clinic, <u>Understanding Your HCFA 1500 Claim Form</u> (attached to Reply Cert. as Ex. 5). Box 27 is highly contextual. In the private sector, it is generally understood to indicate to whom payment should be sent. There is no support for Aetna's spin.

The leading Third Circuit precedents unanimously involve an **actual assignment**; none permits derivative ERISA standing by Box 27. *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 372–73 (3d Cir. 2015); *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 176 n.10, 178-79 (3d Cir. 2014); *cf. Cmty. Med. Ctr. v. Loc. 464A UFCW Welfare Reimbursement Plan*, 143 F. App'x 433, 435–36 (3d Cir. 2005) (holding no jurisdiction and remanding where actual assignment was omitted). If checking the standardized Box 27 was sufficient to establish that a provider has ERISA standing, then there would not be **over 100 cases** in this Circuit litigating whether a provider obtained an assignment, and whether that assignment is sufficient.

Lacking candor, Aetna fails to disclose that this District had already rejected its attempt to skirt it burden of proof on removal by bootstrapping the Form 1500. In *New Jersey Spinal Medical & Surgery, P.A. v. Aetna Ins. Co.*, Aetna relied on,

8

> "the electronically submitted health insurance claim form 1500 of [the plaintiff-provider] with reference to services rendered to [the insured-patient]" and claimed that… "electronically filed HCFA has an entry corresponding to box 27 which indicates that [the provider] did, in fact, accept assignment."

No. 09-2503, 2009 WL 3379911, at *3 (D.N.J. Oct. 19, 2009) (citations omitted).

Judge Martini **rejected** Aetna's argument:

> The Court…**finds that [Box 27] <u>fails</u> to establish the <u>existence of a valid assignment</u> between Plaintiff and any of the Aetna Insureds**. * * *
> Aetna has, therefore, failed to meet its burden of demonstrating that Plaintiff received valid assignments from the…Aetna Insureds at issue by a preponderance of the evidence.

*Id*. at *3-4 (emphasis added).  Similarly, Judge Cavanaugh has rejected the notion that checking Box 27 is sufficient to establish removal jurisdiction and remanded. *N.J. Spinal Med. & Surgery PA v. IBEW Loc. 164*, No. 11-5493, 2012 WL 1988708, at *2 (D.N.J. May 31, 2012).

Here, Aetna has failed to meet its burden of demonstrating that plaintiff received valid assignments.  Aetna submits ten heavily-redacted forms that have Box 27 checked affirmatively.  *See* Petrozelli Cert., ¶¶ 6-7 & Ex. B. [2]  Aetna's proffer is irrelevant and cannot establish standing with respect to 21 plaintiff's claims for

---

[2]    Aetna submitted a 16 forms in total but 6 of them overlap with patients for which defendants produced an Assignment (R.H., R.K., M.B., L.M., V.P. and W.S.). So, these 6 forms are irrelevant since the actual assignment is in the record.

which there is neither a Form 1500 nor an assignment.[3]   Moreover, defendants'
reliance on Box 27 is a *non sequitur* because Aetna has not disputed or waived its
anti-assignment clause.  Because Aetna has left the Court in the dark on these issues,
the Court should hold the forms are insufficient to satisfy removal jurisdiction.

In addition, Aetna's argument is inconsistent with its (and the managed
healthcare's) position for a decade – which has spawned an enormous volume of
ERISA litigation regarding provider standing.  **All health providers routinely
submit claims on this form**.  **Yet**, **when a dispute arises on claims involving this
form, health insurers consistently claim that providers lack ERISA standing**.
Which is it?  Again, Aetna cannot have it both ways.  *See Metcalf v. Blue Cross Blue
Shield of Mi.*, No. 11-1305, 2013 WL 4012726, at *14 n.11 (D. Or. Aug. 5, 2013)
(insurer arguing the Box 27 is insufficient for provider to establish actual assignment
under ERISA).  If it genuinely believed that Box 27 was proof of a valid assignment,
then defendants would not routinely move to dismiss providers' claims submitted
via the same form.  Accordingly, Aetna should be judicially estopped from even
asserting this argument. *AFN, Inc. v. Schlott, Inc.*, 798 F. Supp. 219, 223, 225 (D.N.J.
1992) (judicial estoppel prohibits inconsistent positions).

---

[3]      Aetna has neither an Assignment nor a Form 1500 with Box 27 checked for
the following 21 patients/claims:  R.E., A.B., F.G., P.P., R.C., M.G., Y.F., L.P., J.S.,
R.I., M.FC., L.H., D.G., M.FK, E.R.V., E.RM. and T.G. (Case No. 16-1797), and
R.M., E.R., O.I. and C.C. (Case No. 16-1544).

For all these reasons, Aetna has failed to carry its burden of showing that plaintiff could have brought its claims under ERISA.

## II.   PLAINTIFF HAS "INDEPENDENT" CLAIMS

Defendants must show that "'there is no independent legal duty that is implicated by [defendants'] action.'" (Def's Br. 9).  They fail to do so.

Significantly, Aetna does *not* dispute that virtually all of the claims at issue turn on the *level of reimbursement*, rather than *existence of coverage*.  Instead, Aetna argues that there is "contrary" "controlling case law holding that claims for increased reimbursement are…pre-empted by ERISA." (Def's Br. 1).   But then, Aetna is unable to deliver, citing only 3 inapposite, unpublished cases.

Ultimately, defendants attempt to limit the holding in *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 177-78 (3d Cir. 2014) and *Emergency Physicians of St. Clare's v. United Health Care*, No. 14-404, 2014 WL 7404563, at *5 (D.N.J. Dec. 29, 2014), by claiming these cases only apply to in-network providers.  But courts in this District have held that such a reading of the independent duty requirement is "too narrow a construction and disregards the *Davila* Court's findings."  *Horizon Blue Cross Blue Shield of N.J. v. E. Brunswick Surgery Ctr.*, 623 F. Supp. 2d 568, 574 (D.N.J. 2009).  *See Emergency Physicians*, 2014 WL 7404563, at *6; *Wayne Surgical Ctr., LLC v. Concentra Preferred Sys., Inc.*, No. 06-928, 2007 WL 2416428, at *6 (D.N.J. Aug. 20, 2007).   The *Davila* holding requires "an

11

independent duty," *not* an independent *contractual* duty.  And the line between a contractual duty and quasi-contractual duty is not a firm and fast distinction.

Here, plaintiff alleged the parties engaged in a "course of dealings" as well as contractual connection between plaintiff and Aetna's agents, including agreements with MultiPlan and Global Claim Services, and preauthorization of the services rendered.  *See* Case No. 17-1797, Am. Compl. ¶¶ 71,77,81,89; Case No. 17-1544, Compl. ¶¶ 15,19,23,27,35.  Further, defendants owed a duty pursuant to the New Jersey's Emergency Room Mandate.  Plaintiff's allegations and claims are sufficient to establish an independent duty between the parties, precluding preemption.

## III.   SUPPLEMENTAL JURISDICTION SHOULD NOT BE EXERCISED

To the extent the Court concludes it has ERISA jurisdiction over some of the claims, it should decline to exercise supplemental jurisdiction over the remainder.

The removal pleadings are vague, alleging only "some" or "several" of the plans at issue are so-called ERISA plans.  Now, defendants **admit** that at least a third of the claims at issue in these cases are not ERISA plans.  *See* Def's Br. 17 (stating at least "fourteen (14) of the forty-one (41) claims at issue" do not support ERISA jurisdiction).  Specifically, Aetna does *not* claim, and so concedes, that the following six plan defendants[4] in Case No. 16-1797 are self-funded.  *See* Petrozelli Cert., ¶ 4.

---

[4]     Namely, plan defendants Aramark Corp., Securitas Security Services USA, Inc., SDK Apartments, LLC, Techmedia Network, Inc., Brooker Engineering, PLLC and Bazing LLC.

With respect to Case No. 16-1544, Aetna is mum.  **Aetna does not aver in its removal pleadings or certification opposing remand that any of the plans in Case No. 16-1544 are self-funded plans**.  *Id*.[5]  Further, defendants **concede** that the claims related to the following 20 patients in these cases do <u>not</u> involve self-funded plans: R.E., J.H., J.S., R.I., M.FC., M.FK., D.G., T.G., A.B., S.K., M.G., L.P., E.RV., S.Q., R.M., W.S., E.R., O.I., B.R. and C.C.  *Id*.

Thus, plaintiff's claims for 6 of the 23 plan defendants (26%) in Case No. 16-1797, all plans at issue in Case No. 16-1544,[6] and 20 of the 41 patients (49%) in both cases are apparently not ERISA plans.  When removing, Aetna has the burden of establishing ERISA jurisdiction.  But its removal petition and certification in opposition to remand are starkly inadequate, mandating remand.

In light of the foregoing, plaintiff asks the Court to remand in its entirety the claims in Case No. 16-1544, and to sever and remand the non-ERISA claims in Case No. 16-1797 set forth above.  These claims involve different patients, a different medical conditions and treatments, different bills and payments, and different

---

[5]     In their brief, defendants seem to imply that there are 13 or 14 non-ERISA plans in these cases.  *Compare* Def's Br. 15,17 *with id*. 5-6.  By deduction, that indicates that the plans at issue in Case No. 16-1544 must not be ERISA plans.

[6]     If the Court concurs with plaintiff's deduction regarding Case No. 16-1544, then plaintiff believes this is a circumstance where an award of attorneys' fees and costs is warranted.  *See Siebert v. Norwest Bank Mn.*, 166 F. App'x 603, 607 (3d Cir. 2006) ("fees and costs because defendants have procedurally bungled removal").

13

healthcare plans.  Moreover, because these are "state law claims involv[ing] the interpretation of New Jersey regulatory and statutory provisions governing state-contracted [healthcare insurers]," New Jersey "has a strong interest in interpreting what appear to be complex issues of state [healthcare] law and public policy" *Mazzola v. AmeriChoice of N.J., Inc.*, No. 13-429, 2013 WL 6022345, at *3 (D.N.J. Nov. 13, 2013).  Because plaintiff's claim raise "novel or complex issue of State law," the Court should decline to exercise supplemental jurisdiction.

## IV.   ALTERNATIVELY, DEFENDANTS CONCEDE AND WAIVE ANY DEFENSE OR CHALLENGE TO PLAINTIFF'S ERISA STANDING

Defendants have failed to establish that plaintiff had standing to bring each of the claims under ERISA. *See* Point I, *supra*.  However, if *arguendo* the Court finds defendants' proffer to be sufficient to establish ERISA standing as to the 41 claims, then its opinion should make clear that defendants have conceded and waived all affirmative defenses related to plaintiff's ERISA standing.

In many ERISA healthcare cases, the initial round of motion practice involves a defendant-insurer seeking to dismiss a plaintiff-provider's claim for lack of standing, for example, claiming there is no assignment, the assignment's language is too narrow, or the assignment is void from the outset due to an anti-assignment clause in the patient's plan.  To establish removal jurisdiction, Aetna has asserted and represented to the Court that plaintiff NJBSC has ERISA standing with respect to *each* of these claims.  Consequently, if this motion to remand is denied in full or

14

part, defendants must be estopped and barred from reversing their position on this motion and moving to dismiss these claims for lack of standing.

Judicial estoppel, and limited jurisdiction, preclude a party from maintaining such contradictory positions. *AFN*, 798 F. Supp. at 223, 225. To trigger federal jurisdiction, defendants assert plaintiff has ERISA standing. Therefore, throughout this litigation Aetna is bound by this representation. *See Fellhauer v. City of Geneva*, 673 F. Supp. 1445, 1447 (N.D. Ill. 1987) ("federal jurisdiction over cases removed from state court should be rejected where the propriety of removal is doubtful").

## <u>CONCLUSION</u>

For the foregoing reasons, plaintiff's motion to remand these actions for lack of subject matter jurisdiction should be granted.

Respectfully submitted,

**MAZIE SLATER KATZ & FREEMAN, LLC**
*Counsel for Plaintiff*

BY:  _s/_Eric_Katz_____
        ERIC D. KATZ

Dated:  September 26, 2016

15